## No. 12,486.

MISSEMER ET AL. *v.* TOWN OF HUGO ET AL.

(1 P. [2d] 94)

Decided June 15, 1931.

Mr. JOHN H. DENISON, for plaintiffs in error.

Messrs. PERSHING, NYE, TALLMADGE, BOSWORTH & DICK, Mr. J. P. DEATHERAGE, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court, hence we refer to them as plaintiffs and defendants, or by name.

The town contracted to sell its electric light plant to the utilities company. To enjoin the consummation of that agreement plaintiffs, as taxpayers, appearing for

themselves and others, brought this action. The town's demurrer to their complaint was sustained. They stood, and to review the judgment thereupon entered against them they prosecute this writ.

Of the several grounds of demurrer the only one here requiring consideration is want of facts. The town was proceeding under chapter 191, S. L. 1927. By that act it was authorized "To sell and dispose of * * * electric light works, * * *; provided, that the question of said sale and the price to be paid for said property and other terms thereof, shall first be submitted to and ratified by a majority vote of the qualified property electors of the city or town, * * *."

The complaint alleges that Exhibit A, thereto attached (hereinafter referred to as A), is a copy of the contract of sale; that the only notice ever given the electors stated the price to be paid "but did not state or give any notice of any of the other terms of said contract"; hence that at the election, which presumably authorized the sale, "a majority of said electors did not know the real terms of said sale and voted in ignorance thereof." If this be true the sufficiency of the complaint and the violation of the statute are apparent. Defendants contend that an examination of A discloses that the only terms of sale were cash, hence all requisite information was furnished the electors. If this be true the demurrer was properly sustained. It follows that the controversy depends upon the terms of sale as disclosed by A. This contract is one between the towns of Hugo, Flagler, Arriba and Seibert, and the utilities company. It recites:

"That, whereas, the Towns are desirous of securing increased, extended and more efficient light, power and heating service for themselves and their inhabitants by the improvement, enlargement and extension of existing electrical facilities and equipment now owned and operated by them, and, to that end, desire to contract with the Company to operate the electrical generating plants which now exist in the Towns of Hugo and Flagler and

the distribution systems existing in all of said Towns and said transmission lines as now exist; and

"Whereas, the Company is desirous of purchasing the said plants and distribution systems and the Towns are willing to sell said plants and systems at a value agreed upon, but are unwilling to consummate said sale until the Company shall have made certain extensions, improvements and betterments to said plants and systems, and shall have demonstrated its operating capacity and efficiency to the satisfaction of the Town;"

That the contract shall go into effect when the towns shall have granted franchises to the company; that the lease of the property shall be for a period of twenty-five years; that the company shall pay a stipulated semi-annual rental, take possession, operate the property efficiently, purchase, at its option, certain supplies on hand, and make necessary changes and charge certain specified rates for service; that:

"The Towns will continue to use electrical power for all municipal uses, including water pumping, so long as municipal water supply shall be procured by pumping, and will pay therefor at schedule rates, with a minimum guaranty of $1.50 per month per H. P. of connected load.

"Note 2. The Towns will continue to use electrical current for street lighting purposes and will pay therefor at schedule rates, with a minimum guaranty per month as follows: Hugo $100."

That the company will give notice and apply for a franchise, and ninety days after the granting of the same begin certain constructions and alterations and make due provision for the same; that at the termination of the contract, without sale, the company will return the property in good condition; that the towns will purchase from the Company, at the expiration of the contract, certain equipment then in use; "It being understood that the Towns desire to sell their properties herein referred to * * *, but that they may not lawfully do so without first having the question of such sale, the price to be paid and other

terms submitted to and ratified by a majority vote of the qualified property electors of each of said Towns, it is agreed that:" the purchase price shall be stated, provided the sale is ratified and approved prior to December 1, 1930; that the price shall be reduced four per cent per annum for any portion of any calendar year beyond December 1, 1930, which elapses before the towns vote to sell "under the terms hereof"; that the towns and the company will alternately pay the expenses of elections held to ratify the sale; that the company will make a deposit of a specified forfeiture in a bank named, under escrow instructions; that within thirty days after the contract goes into effect the towns will furnish abstracts showing merchantable title to the property; that:

"It is understood that as to the Towns, this contract is in all respects several, and not joint, and that no one of said Towns in any manner has any right or authority to bind any one or more of the others, and that as to all of said Towns, this contract is not assignable or in any manner transferable.

"While this contract remains in full force and effect, the Company shall have the exclusive right and option to purchase the electrical properties and equipment of the Towns herein described * * * , whenever the Towns, or any of them, by a majority vote of its or their qualified property electors shall have elected to sell, * * *."

Further provisions of A need not be here set out, save to note that there is attached to it a copy of the proposed escrow agreement.

We have carefully examined the authorities cited in the briefs but they do not help us to answer the question, Does this contract disclose terms of sale which, under the statute, must have been made known to and approved by the electors? That must be answered from the document itself. Embodied in it we find both a lease and an option to purchase, so interwoven as to be inseparable. We cannot say that either the town or the company would have taken one without the other. We cannot say of one pro-

226

vision, This was a consideration for the lease, and of another, This was a consideration for the sale. The lease was made to the end that a sale might be consummated. The town declined to sell "until the company shall have made certain extensions," and "demonstrated its operating capacity," etc. For these purposes the lease was made. The term thereof was twenty-five years. During that time "the company shall have the exclusive right and option to purchase." The town was obliged to continue as a consumer of current for pumping water so long as it obtained its municipal supply in that way, and obliged to continue, during the term of the lease, and perpetually in case of sale, to light its streets by current supplied by the company, and at stipulated rates and minimum. The company could demand repeated elections to determine the question of sale, with a four per cent annual diminution in purchase price. Moreover, under lease or sale, a schedule of prices for current for every conceivable purpose, whether used by the municipality or its inhabitants, was fixed by the contract and so became a part of the terms of the sale.

 As to rates and service, defendants answer that these are under the supervision of the Public Utilities Commission and if unfair those injured had their remedy by appeal to that body. If that were a complete answer those portions of the contract would be inoperative and futile. But there is a borderland between rates which are confiscatory and rates which are oppressive wherein such contracts are valid. Therein these stipulated rates were vital, and were doubtless so regarded by the parties.

 We find no escape from the conclusion that those covenants above enumerated were neither limited to the lease nor mere details of the contract, but were controlling terms and conditions of the proposed sale. As such, notice thereof to the electors, and approval by them, were indispensable under the statute.

We do not notice developments since the entry of this

judgment, brought to our attention by affidavit. The sole question before us is the sufficiency of the complaint.

The judgment is accordingly reversed with directions to overrule the demurrer and proceed in conformity herewith.

MR. JUSTICE HILLIARD not participating.